IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**WILLIAM S. WAITE**

    **Plaintiff,**

**vs.**                                                                                       **CASE NO. 1:07CV45-MP/AK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits under Title II of the Social Security Act (DIB) and for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

### A. PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on June 30, 2004, alleging a disability onset date of December 13, 1993, because of bipolar disorder and attention deficit disorder. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who

conducted a hearing on May 3, 2006, and entered an unfavorable decision on June 14, 2006. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

**B.      FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had a severe impairment, bipolar disorder, but that this and his other mental conditions do not meet the listing requirements for disability. (R. 20-21).  He must meet these requirements prior to his date last insured (December 31, 1998), for DIB, and the medical evidence does not support any such a finding.  The record shows that Plaintiff took a sizeable inheritance to Las Vegas and gambled until the money was gone, which involved "a substantial investment of time and effort  over a period of many months, and of course he had to keep track at all times of the various elaborate game rules and strategies," including at one point, "a 36-hour stint of non-stop gambling," which he attributes to a "manic episode."   (R. 22).  The ALJ finds the opinions of Drs. Roberts and Normile "exaggerated and strangely extreme," but relies upon the findings of Dr. Mata, who did not attribute all of Plaintiff's behaviors to "some type of mental disorder," and found him capable of doing simple work.  (R. 22-23).  Drs. Roberts and Normile presented inconsistent variances between their opinions and their treatment records, and therefore, their opinions were discounted.  Thus, the ALJ found Plaintiff to have the residual functional capacity to perform his past relevant work, and he was, therefore, not disabled.

**C.      ISSUES PRESENTED**

**No. 1:07CV45-MP/AK**

Plaintiff argues that the ALJ improperly disregarded the opinions of his treating physicians; that the ALJ erred in assessing his RFC; and that the ALJ should have obtained the services of a vocational expert.

The government responds that the ALJ accepted the opinion of Dr. Mata, which was consistent with the treatment notes of Plaintiff's other treating sources that showed improvement with medication. Also, Plaintiff's daily activities (gambling for long periods of time and for many months) were inconsistent with his claims of depression and social anxiety. The ALJ is charged with assessing Plaintiff's credibility, and he found Plaintiff unmotivated to work (see R. 239) more than unable to work because of his alleged mental conditions.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

### D.  STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

**No. 1:07CV45-MP/AK**

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education,

**No. 1:07CV45-MP/AK**

and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final

**No. 1:07CV45-MP/AK**

decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659, 676 (11th Cir. 1990).

E.     **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff's treatment history began, so far as the present record is concerned, in Las Vegas in 1998. He was treated for depression and ADHD with medication, which worked alternately. He did not work at that time, but gambled for hours or days at a time. (R. 138-164). There were no treatment notes concerning manic episodes, his treatment and medication regimen was for depression, although Plaintiff attributes his gambling to this aspect of his bipolar disorder.

Plaintiff has two treating sources, which found him seriously limited by his mental conditions: Dr. Normile (R. 199-202) and Dr. Roberts (R. 204-206), and one treating source Dr. Mata, who found him capable of simple work. (R. 134-135, 169-169). Also, Dr. Datta, who performed a consultative examination on October 27, 2004, found no limitations. (R. 174-178). A mental functional capacity assessment (R. 180-182) and a Psychiatric Review performed by state agency physicians (R. 184-198) also found him to be only mildly limited by his conditions.

F.     **SUMMARY OF THE ADMINISTRATIVE HEARING**

Plaintiff claims that he has been disabled since December 13, 1993, and has not worked at all since that time. (R. 278). His last job was office work, as a temporary secretary. (R. 279). He was last insured for Title II disability through December 31, 1998, but he is also seeking SSI benefits. (R. 279-280). He describes his conditions as

**No. 1:07CV45-MP/AK**

bipolar disorder and attention deficit disorder, which results in "I usually don't do anything during the day. I don't get dressed when I get up in the morning. I don't shower or shave and I just kind of sit around the house all day watching TV or doing something like that." (R. 280-281). He is not sure why he is this way, he's been seeing a psychiatrist for many years, it is just "the way that I am." He takes Ritalin for ADD and three medications for depression. (R. 281). The medication has helped. (R. 282). He has a lot of anxiety about social situations. (R. 283). The primary difficulty in working with his depression is the "persistence needed to go to work," as well as "staying on task and finishing the tasks." (R. 284). When he lived in Las Vegas he would stay up all night and gamble for 36 hours and then sleep for a couple of days. (R. 286). Dr. Bauer treated him during this time. (R. 286). These were self-described manic episodes, which were followed by depressive episodes described as sleeping and having regret about losing so much money. (R. 288).

**G.   DISCUSSION**

    a)   <u>Treating Physicians</u>

Plaintiff contends that the ALJ should have accepted the opinions of his treating sources, Drs. Roberts, Normile, and Mata, including the RFC assessments of Drs. Roberts and Normile. Plaintiff further contends that it was improper for the ALJ to reject these RFC's in favor of those prepared by the state agency physicians.

The Commissioner responds that the ALJ noted that the opinions of Drs. Normile and Roberts were inconsistent with their treatment notes, which indicated no serious

**No. 1:07CV45-MP/AK**

mental condition and improvement with medication. Dr. Mata, also a treating source, found Plaintiff capable of simple work activities, and the ALJ properly relied on his opinion and rejected the opinions of Drs. Roberts and Normile.

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

**No. 1:07CV45-MP/AK**

In the present case, the ALJ clearly articulated his reasons for rejecting the opinions of two of Plaintiff's treating sources in favor of one source, Dr. Mata, and this Court will not disturb such a finding when there is substantial evidence for it.

    b)    <u>Residual Functional Capacity Assessment</u>

Plaintiff argues that the ALJ erred in basing his RFC finding on a non-examining source, the state agency physician.

The Commissioner responds that the ALJ may properly give substantial weight to a state agency consultant when the record as a whole supports it, but he is not required to adopt all of the limitations set forth in the consultant's opinion. 20 CFR §§ 404.1545, 416.945.

An individual's ability to work must be assessed in light of all his impairments and any related symptoms, including pain, which is referred to as their residual functional capacity (RFC). 20 CFR §404.1545. A person's residual functional capacity is based on the *most* they can do despite their limitations. *Id.* In making this determination all of person's impairments are considered, even those which are not considered severe, and the entire record is to be considered, even non-medical information. *Id.* The claimant is responsible for providing this evidence. *Id.* This assessment is first used at Step Four of the evaluation process. If the ALJ determines that a claimant cannot do his past relevant work, then the same RFC will be used at Step Five in conjunction with the Guidelines to decide if the person can make an adjustment to other work in the national economy.

**No. 1:07CV45-MP/AK**

Medical opinions from treating sources are entitled to "special significance" and may be entitled to controlling weight if they are well-supported by clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence. If the ALJ's assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p

In the present case, the ALJ clearly explained his assessment, what testimony and medical sources he relied upon in making his assessment, and this Court will not disturb his finding under such circumstances.

    c)    <u>Vocational Expert</u>

Plaintiff argues that his mental limitations are clearly non-exertional limitations, thereby precluding reliance upon the grids, and the ALJ should have utilized the services of a vocational expert. However, as the Commissioner notes, when an ALJ finds that a person can perform their past relevant work, he is not required to use vocational expert testimony. <u>Gaddis v. Chater</u>, 76 F.3d 893, 896 (8th Cir. 1996); <u>Barrett v. Chater</u>, 38 F.3d 1019, 1024 (8th Cir. 1994). The ALJ found Plaintiff capable of performing his past relevant work as performed in the national economy, but still proceeded to the fifth step of the evaluation process, finding that Plaintiff could adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1239 (11th Cir. 2004). The Eleventh Circuit has "recognized that the grids may be used in lieu of

**No. 1:07CV45-MP/AK**

vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995). "It is only when the claimant can clearly do unlimited types of work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

     The ALJ specifically relied upon the opinion of Dr. Mata and the functional assessments by state agency physicians that Plaintiff could perform the work he had performed in the past. The ALJ also relied upon the fact that he had sustained concentration and endured social situations to gamble extensively, such that the limitations described by himself and his other treating sources were not entirely credible. Having rejected these nonexertional limitations as severe, the ALJ could properly find him capable of performing his past relevant work and no expert testimony

**No. 1:07CV45-MP/AK**

was required.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this **30th** day of April, 2008.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:07CV45-MP/AK**